SATURNINA MONTAÑEZ MONTAÑEZ, ETC., Plaintiff and Appellee,
v. GERARDO RODRÍGUEZ, Defendant and Appellant.

No. 9422. Argued April 9, 1947.—Decided April 22, 1947.

*José C. Jusino* for appellant. *Miguel Torres Reyes* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The defendant has appealed from a judgment finding that Dulce María Montañez, the daughter of Saturnina Montañez, is his natural child and ordering him to pay ten dollars a week for her support.

The lower court ruled that the girl was the natural child of the defendant on the ground that when she was conceived and born, the defendant was living in concubinage with the mother. The defendant contends that this finding is not sustained by the testimony.

The mother testified that in 1941 she was a virgin when the defendant took her from her father's house to live with him; that from 1941 to 1945 she lived with him at two different places, the last being in the home of Amparo Rivera; that the defendant took her to live at these places as his mistress; that he gave her six dollars a week to pay for her lodging at the house of Amparo Rivera; that the defendant came to see her three times a week and went out with her every time he came; that he always entered the house publicly

and everybody could see him come in the house; that she was living with the defendant when the child was conceived and was born on February 15, 1945; that she has never lived with any other man and the defendant is the father of the child; that the defendant took her to the home of Dominga Rivera, the aunt of Amparo Rivera and a midwife, where she stayed and had her baby; that the defendant visited her there three times, and paid the midwife $35; that after the baby was born, the defendant gave her three dollars a week; that he often came to see the baby; and that he stopped coming to see her when the baby was eight months old.

On cross-examination she testified that the defendant had been a married man since she was a small girl. When recalled to the stand at a subsequent session of the court, she stated that after the hearing on the first day, the defendant came to see her and told her she had to surrender the child to him because it was his and belonged to him. Later, she met the defendant and his wife on the street and the latter told her the same thing.

Benigno Gaetán Santiago testified that he saw the defendant coming to visit the mother at the house of Amparo Rivera and leaving with her, and that their relations continued while she was pregnant.

The mother also produced the midwife as a witness, but the latter denied that the defendant had brought the mother to her or that he was in any way connected with the birth of the child. In view of the fact that she had previously made a contrary sworn statement before a notary, the district court charged her with contempt by perjury in open court.

We do not stop to examine the testimony of a number of witnesses for the defendant, including the defendant himself and Amparo Rivera, all of whom denied the story of the mother in every detail. The lower court did not believe their testimony and we therefore put it aside. Since the lower court believed the testimony of the mother, we accept it as

true. And we also take into consideration the observation of the district court that the child bore a marked resemblance to the defendant. Nevertheless, the testimony is insufficient to sustain the judgment.

■ Section 1 of Act No. 229, Laws of Puerto Rico, 1942 (p. 1296), eliminates the barrier of adultery which in the past § 125 of the Civil Code has raised against recognition of children as natural children; but Act No. 229 was approved in the light of § 125, and did not eliminate its other requirements. Consequently, although an adulterous child born as here after the effective date of Act No. 229 may now be recognized as a natural child by virtue of § 1 thereof, he must still fall within one of the provisions of § 125 to attain that status. See *Correa* v. *Heirs of Pizá*, 64 P.R.R. 938; *Vázquez* v. *De Jesús*, 65 P.R.R. 846; Muñoz Morales' "*La Ley núm. 229 de 1942 y sus Implicaciones*", La Toga, October 16, 1944 edition, pp. 6–7. Cf. *Cruz* v. *Andrini*, 66 P.R.R. 119; *Fernández* v. *Heirs of Fernández*, 66 P.R.R. 831.

■■ The lower court apparently recognized this requirement. It held that the parties had been living in concubinage, which would bring this child within § 125. But the difficulty is that the facts herein disclose at the most that the mother was the mistress of the defendant. This does not constitute concubinage. For the latter to exist the couple must live together as man and wife without being such. *Vázquez* v. *De Jesús, supra* pp. 849, 850, and cases there cited.

The plaintiff based her case on the concubinage provision of § 125 of the Civil Code. She did not contend and the lower court did not find that the father was obliged to recognize this child as his natural child because of any other provision of § 125. We have therefore not considered that question.

The judgment of the district court will be reversed and a new judgment entered dismissing the complaint.